**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BLACKMORE/CANNON DEVELOPMENT COMPANY, LLC, a Utah Limited Liability Company, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| vs. | Case No. 2:08-cv-370 CW |
| U.S. BANCORP d/b/a U.S. BANK, a Minnesota Corporation doing business in the State of Utah, *et al.*, | |
| Defendants. | |

Plaintiff Blackmore/Cannon Development Company, LLC ("the Development Company") has filed this action against Defendant U.S. Bank National Association.[1] The Development Company asserts several state and federal causes of action stemming from events surrounding a deal for a land development project. Now before the court is U.S. Bank's motion to dismiss each cause of action in the Development Company's Amended Complaint. For the reasons explained below, U.S. Bank's motion is GRANTED.

---

[1] In its Amended Complaint, the Development Company named "U.S. Bancorp d/b/a U.S. Bank" as a defendant in addition to US Bank National Association. U.S. Bank National Association contends that the Development Company named U.S. Bancorp in error, and the Development Company does not deny this contention. Accordingly, the court will assume for purposes of this opinion that the Development Company agrees that U.S. Bank National Association is the proper defendant in this action. All references herein to "U.S. Bank," therefore, are to U.S. Bank National Association. The Development Company also named unknown persons as defendants, but as of this date, the Development Company has not identified any additional defendants.

# BACKGROUND[2]

In 1996, Lester Cannon obtained commercial loans from U.S. Bank to finance the purchase and development of land in Washington County, Utah.[3] Encountering problems with the development project, Mr. Cannon went into default on his loans and fell behind on property taxes. As these difficulties arose, U.S. Bank and Mr. Cannon amended the loan agreements several times, adding more restrictive terms on the development of the property. Most, if not all of these additional restrictions were never recorded.

After falling into default, Mr. Cannon began to look for someone to take over the project. Mr. Cannon's attorney at Snow, Jensen & Reece introduced him to L. Lane Blackmore, a real estate developer in the Washington County area. At that time, Mr. Blackmore was also a client of Snow, Jensen & Reece, as was U.S. Bank. From December 2001 to mid-2002, Mr. Cannon and Mr. Blackmore met to discuss the possibility of turning Mr. Cannon's project into a joint development venture. At the suggestion of Snow, Jensen & Reece, Mr. Blackmore and Mr. Cannon created the Development Company to take over and carry out the project. Mr.

---

[2] Although this is a motion to dismiss, both parties refer in their papers to certain facts outside the complaint and the attachments to the complaint. If the court were to rely on those outside facts to come to its decision, it would be obliged to convert this motion into one for summary judgment. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The court however, declines to consider those outside facts. Instead, the court will limit its analysis to facts alleged in the complaint and to facts contained in the documents attached to the complaint, whose authenticity has not been disputed by either side. *See id.* at 1384-85 (courts may refer to facts in documents relied upon by complaint without converting motion to dismiss into one for summary judgment). *See also San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 808-09 (2nd Cir.1996) (considering full text of documents including press releases in analyzing federal securities fraud action).

[3] Mr. Cannon allegedly acted through companies including Shadow Canyon Land Company, L.L.C. and L & D Development Inc., but for the sake of convenience, the court will refer to Mr. Cannon and his companies as "Mr. Cannon" in this order.

Blackmore was made the general manager of the Development Company.

To set out the terms of the Development Company's acquisition and continuation of the project, Mr. Cannon and Mr. Blackmore negotiated an agreement entitled "Development Agreement." The parties to the Development Agreement were Mr. Blackmore, Mr. Cannon, and the Development Company. The Development Agreement provided Mr. Cannon a 50% interest in the Development Company in exchange for transferring the project's land to the Development Company, subject to U.S. Bank's encumbrances. Mr. Blackmore would obtain a 50% interest in the Development Company in exchange for payment of (1) $70,000 in accrued interest to U.S. Bank, (2) $63,000 in back property taxes, (3) $50,000 to Mr. Cannon at closing, and (4) taking reasonable steps to obtain an extension on the U.S. Bank loan.

The Development Company was to assume the obligations to repay Mr. Cannon's loans. In regards to the anticipated terms of that assumption, the Development Agreement provides the following:

> 9.1 U.S. Bank Documents. The parties anticipate receiving proposed documents prepared by U.S. Bank for the purpose of extending the terms of the Note. In the event that the documents received from U.S. Bank are not consistent with this Agreement then Blackmore shall have the right at his discretion to terminate this Agreement. Based upon parties [sic] communications with U.S. Bank, the parties hereto anticipate that the terms contained in the U.S. Bank documents will provide the following which the parties hereby agree are reasonable and consistent with this Agreement. . .

(Dev. Agreement ¶ 9.1, attached as Ex. 9 to Am. Compl.) The Development Agreement then lists eleven bullet-pointed items relating to the Development Company's anticipated assumption of Mr. Cannon's loan. The Development Agreement further specifies that Mr. Blackmore, as the Development Company's manager, was authorized to refinance the U.S. Bank loan with another

bank or private lender.

Attorneys at Snow, Jensen & Reece provided U.S. Bank with draft copies of the Development Agreement during negotiations. U.S. Bank made comments and suggestions on those drafts, which were incorporated into the Development Agreement at U.S. Bank's request. U.S. Bank reviewed the Development Agreement to determine how it would impact the bank.

On August 21, 2002, the Development Company, Mr. Blackmore and Mr. Cannon executed the Development Agreement. Immediately thereafter, Mr. Blackmore began the process of obtaining permits and began constructing new homes on the development property, even though Mr. Canon had not yet conveyed title to the land to the Development Company. On September 20, 2002, U.S. Bank provided Mr. Blackmore with a 98 page multi-section draft agreement under which the Development Company would assume Mr. Cannon's loans. The proposed assumption agreement incorporated terms limiting the development project that were not included in the list of anticipated terms set out in the Development Agreement. Neither U.S. Bank nor Mr. Cannon had disclosed these new terms to Mr. Blackmore or the Development Company before they entered the Development Agreement.

The Development Company contends that U.S. Bank failed to reveal the terms even though it intended to propose those terms all along. As support, the Development Company alleges that before the Development Agreement was entered, U.S. Bank created drafts of the assumption agreement containing the undisclosed terms. After reviewing the draft and after attempting to negotiate the undesirable terms with U.S. Bank, Mr. Blackmore rejected it on behalf of the Development Company. By that time, Mr. Blackmore had hired new counsel to represent him and the Development Company in the deal.

4

In early November 2002, Mr. Blackmore informed Snow Jensen & Reece that he had located an alternative source of funding for the project. Mr. Blackmore prepared trust deeds, notes, and release agreements between the Development Company and a private investment group in anticipation of this alternate source of funding. At the time, Mr. Blackmore incorrectly believed that Mr. Cannon had conveyed the property to the Development Company. In reality, however, Mr. Cannon had not transferred the property to the Development Company at that time: nor would he ever do so.

Sometime in January 2003, Mr. Cannon's son-in-law, Frank Lindhardt, contacted U.S. Bank to discuss the purchase of the development project through Shadow Glen 420, Inc. In late January/early February 2003, Shadow Glen 420, Inc. purchased the development project from Mr. Cannon. The Development Company was informed of that sale by a letter dated February 23, 2003.

The Development Company filed an action in Utah state court on January 31, 2008, which was removed to this court. The Development Company filed an Amended Complaint in this court on October 24, 2008. In its Amended Complaint, the Development Company alleges violations of §10(b) of the Federal Securities Exchange Act of 1934, inducing breach of contract, fraudulent non-disclosure, negligent misrepresentation and/or omission, tortuous interference, and breach of fiduciary duty. U.S. Bank has moved to dismiss each cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ANALYSIS

### I.  Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the court presumes the truth of

all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209,(2007). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, though all reasonable inferences must be drawn in the non-moving party's favor, *Tal*, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1969 (quoted in *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 129 S.Ct. 1937, 1950, (2009) (citations omitted). Under this standard, a claim need not be probable, but there must be facts showing more than a "sheer possibility" of wrongdoing. *Id.*

The Development Company need only make a "short and plain statement of the claim" with respect to its non-fraud causes of action. Fed. R. Civ. P. 8(a)(2). The Development Company's state and federal fraud claims, however, both require more. To effectively plead its state law fraud claim, the Development Company must make its allegations with "particularity." Fed. R. Civ. P. 9(b). "More specifically, this court requires a complaint alleging fraud to 'set

forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237-38 (10th Cir. 2000) (citation omitted). The purpose of this rule is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . ." *Id.* (internal quotation marks and citation omitted).

Even more is required of the Development Company to sufficiently plead its federal securities law claim. The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C.A. § 78u-4(b), along with Rule 9(b), mandate that plaintiffs alleging securities fraud violations are subject to heightened pleading standards. *See, e.g., Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095-96 (10th Cir. 2003). In addition to Rule 9(b)'s particularity requirement, securities fraud allegations must meet two additional burdens. First, a "complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at 1095, quoting 15 U.S.C.A. § 78u-4(b)(1). Second, rather than pleading scienter generally, as allowed in other fraud cases, plaintiffs alleging securities fraud must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Adams*, 340 F.3d at 1096, quoting 15 U.S.C.A. § 78u-4(b)(2). The court must dismiss complaints that do not meet these requirements. *See* 15 U.S.C.A. § 78u-4(b)(3). To decide whether the Development Company satisfies these requirements, the court must "evaluat[e] the facts alleged in a complaint to determine whether, taken as a whole, they support a reasonable

belief that the defendant's statements identified by the plaintiff were false or misleading."
*Adams*, 340 F.3d at 1099. Relevant factors in making this determination include the level of detail provided by the facts stated in a complaint and the complaint's overall coherence and plausibility. *See id.* If, after considering the factors, the court concludes that "a reasonable person would believe that the defendant's statements were false or misleading, the plaintiff has sufficiently pled with particularity facts supporting his belief in the misleading nature of the defendant's statements." *Id.*

## II. Federal Securities Fraud Claim

The Development Company's securities fraud claim appears to be based on an alleged "bait and switch" scheme. That is, according to the Development Company, U.S. Bank knew before the Development Company entered the Development Agreement that there were unrecorded restrictions on developing the project in Mr. Cannon's loan agreements. Further, the Development Company maintains that U.S. Bank always intended to impose those restrictions on the Development Company as part of the Development Company's anticipated assumption of the loan. The Development Company asserts that U.S. Bank nonetheless only revealed some of the intended loan assumption terms in the Development Agreement, leading the Development Company to believe that the Development Company could assume the loan on favorable terms. Because of U.S. Bank's non-disclosure, the Development Company argues, it took the bait and entered the agreement. The Development Company argues that it was subsequently harmed when U.S. Bank switched the deal, leading Mr. Blackmore to refuse to agree to the new terms and Mr. Cannon selling the land to a third party. The Development Company contends that

because the Development Company sold shares issued by of itself to Mr. Blackmore and Mr. Cannon as part of the Development Agreement, and because membership interests in a Utah limited liability company are securities, it may sue under federal securities fraud law.

U.S. Bank proposes four grounds on which it asserts the Development Company's federal securities fraud claim must be dismissed. First, U.S. Bank argues that the claim is barred by the statute of limitations. Second, U.S. Bank contends that the Development Company has no standing to bring the claim. Next, U.S. Bank maintains that the Development Company did not allege that the fraud was in connection with the sale of securities. Finally, U.S. Bank insists that the Development Company has not met the PSLRA's heightened pleading standards. The court will address each of these arguments below.

### A.      Statute of Limitations

U.S. Bank argues that the Development Company has brought its securities fraud claim beyond the statute of limitations for doing so. U.S. Bank is correct. According to 28 U.S.C. § 1658(b), a federal securities fraud claim may be "brought no later than the earlier of- - (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." The two year discovery period "begins to run once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud." *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1201 (10th Cir. 1998). It is not necessary for a party to have full knowledge of the "nature and extent of the fraud" for the party to be on discovery notice. *See id.* at 1203 (internal quotation marks and citation omitted). Rather, "[i]nquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Id.* (internal quotation

marks and citation omitted).

Assuming for the sake of argument that U.S. Bank's alleged actions could make it liable for securities fraud, the Development Company had unmistakable notice of the facts underlying the alleged fraud by no later than early 2003. The time line of the events alleged makes this clear. First, the Development Company signed the Development Agreement in August 2002, and directly and indirectly communicated with U.S. Bank about the deal for several months before that time. Mr. Blackmore, the Development Company's manager, then received U.S. Bank's proposed loan assumption agreement in September 2002. By the Development Company's own allegation, that draft contained "terms that had hereto been kept undisclosed to Plaintiff[] prior to the signing of the [Development Agreement], and which Cannon and U.S. Bank had entered into in order to limit the scope of future development activity on the Property." (Am. Compl. ¶ 114). Mr. Cannon then sold the property to Mr. Lindhart's company some time in late January/early February, 2003. The Development Company was informed of that sale on or around February 23, 2003.

The Development Company was put on notice that something was amiss as soon as U.S. Bank provided Mr. Blackmore with a draft of the assumption agreement that contained additional, more restrictive terms that were not in the Development Agreement. A reasonable party would have suspected that there was a reason that those terms were included and inquired as to why. One possible explanation would have been that Mr. Cannon's loans put greater restrictions on the project than U.S. Bank had revealed to Mr. Blackmore before the Development Company signed the Development Agreement. Another was that U.S. Bank never

intended to agree to the only the terms in the Development Agreement, planning all along to "bait and switch" the Development Company into a more restrictive assumption agreement. Accordingly, the Development Company had sufficient facts as of September 2002 to put it on notice that U.S. Bank might have omitted material information before the Development Company entered the Development Agreement. Further, by late February 2003, the Development Company knew that Mr. Cannon had sold the development project to Mr. Lindhart's company. At that point, the Development Company knew that it was at risk of losing its investments in the project.

Because the Development Company was on inquiry notice of all the facts underlying its securities fraud claim against U.S. Bank by February 2003, it had until late February 2005 to bring that claim. But the Development Company did not bring this action until January 31, 2008, almost three years after the time required by the statute. Its securities fraud claim is accordingly barred by the statute of limitations. U.S. Bank's motion to dismiss that claim is therefore granted.

The Development Company's arguments otherwise do not prevail. The Development Company argues that the court should apply the five year statute of limitations, starting the period at the date that Mr. Cannon sold the property, on about January 31, 2003. The Development Company maintains that the five year limit applies because the Development Company did not discover U.S. Bank's omissions until July 2006, when U.S. Bank produced documents that the Development Company argues prove that U.S. Bank always intended to impose stricter terms than those in the Development Agreement. But as discussed above, inquiry

notice does not begin when a party has full, actual knowledge of all of the underlying facts. Rather, a party is on adequate notice to start the running of the statute when a reasonable person should have inquired as to whether fraud had occurred. In this case, the Development Company did not need later-produced documents to be aware that U.S. Bank may have omitted the restrictive new terms and/or planned to surprise the Development Company with new terms: those same new terms were part of what U.S. Bank proposed in September 2002.

The court need go no further to conclude that the securities fraud claim should be dismissed. The court, however, will briefly discuss U.S. Bank's other grounds for dismissal in the event that the five year period should have been applied.

### B.    Standing

U.S. Bank argues that the Development Company lacks standing because it issued the securities in this case and neither bought or sold a security. Only actual buyers and sellers of securities have standing to bring a federal securities fraud claim. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1221 (10th Cir. 2000). The Development Company counters that the Development Company sold its membership shares, so it counts as a seller.[4]

U.S. Bank has not offered any authority for the proposition that an issuer of a security may not also be a seller of the security. In *Equity Oil Co. v. Consolidated Oil & Gas,Inc.*, 596 F. Supp 507, 513 (D. Utah 1983), there was no allegation that the plaintiff purchased or sold stocks, so the plaintiff appeared to be suing in its capacity as issuer alone. Here, the Development

---

[4] The Development Company also argues that it has standing because it represents the interest of Mr. Blackmore. There is no allegation in the complaint, however, that Mr. Blackmore has assigned any claims to the Development Company, so this argument is without merit.

Agreement makes plain that the Development Company both issued and sold memberships in itself as part of the deal. That is, under the Development Agreement, the Development Company was to receive land and other consideration for the membership shares it issued. Accordingly, U.S. Bank does not prevail on its argument that the Development Company has no standing because it is not a seller of a security.

### C. "In Connection"

One of the requirements to state a cause of action for securities fraud is that the fraud must occur "in connection" with the purchase or sale of a security. 15 U.S.C. § 78j(b). The Tenth Circuit has "construed 'in connection with' to require a causal connection between the allegedly deceptive act or omission and the alleged injury." *Arst v. Stifel, Nicolaus & Co., Inc.*, 86 F.3d 983, 977 (10th Cir. 1996) (citation omitted). *See also Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (federal securities statutes meant to "protect [investors] against those economic losses that misrepresentations *actually cause*") (emphasis added and citation omitted) and *Westinghouse Credit Corp. v. Bader & Duffy*, 627 F.2d 221, 223 (10th Cir. 1980) (fraudulent sale must be directly associated with injury). U.S. Bank argues that the fraudulent omissions alleged by the Development Company did not occur in connection with the sale of the membership shares.

U.S. Bank is correct. The Development Company alleges that had Mr. Blackmore and the Development Company known about the restrictive terms or that U.S. Bank was intending to propose unfavorable terms for the Development Company to assume the loan, Mr. Blackmore would not have agreed to the Development Agreement and the Development Company would

not have issued its shares.  The Development Company does not allege, however, that it was harmed by selling its shares under the Development Agreement.  To the contrary, the alleged harm to the Development Company occurred when Mr. Cannon sold the land to Mr. Lindhart's company.  And the sale of the land to Mr. Lindhart's company occurred long after the Development Company sold its shares.  Accordingly, the Development Company fails to meet the "in connection" requirement of a federal securities fraud claim.[5]

### D.    PSLRA Requirements

Finally, U.S. Bank argues that the Development Company has not adequately plead its securities fraud claim for two reasons.  First, U.S. Bank contends that the Development Company did not state its fraud claim with particularity because the Development Company did not specify the contents of the more restrictive terms on the project that U.S. Bank did not reveal.  Second, U.S. Bank argues that the Development Company did not adequately plead scienter under the PSLRA.

On the first point, U.S. Bank's argument prevails.  The PLSRA requires that "the complaint specify each statement alleged to have been misleading [and] the reason or reasons

---

[5] The court further notes that the Development Company is fairly clearly trying to "fit a square peg into a round hole" by bringing this action as one for securities fraud.  The core underlying transaction at issue here was the Development Company's acquisition of the project, including the assumption of Mr. Cannon's loans.  The alleged fraud relates to U.S. Bank's withholding relevant information from the Development Company to try to put the Development Company in an inferior bargaining position on assuming the loan once the Development Company entered the Development Agreement.  The fact that the Development Company issued and sold memberships as part of the Development Agreement was, at best, incidental to this alleged fraud.  This type of situation is far afield from the main purpose of federal securities statutes, which is to "maintain public confidence in the marketplace." *Dura*, 544 U.S. at 345(citation omitted).

why the statement is misleading." *Adams*, 340 F.3d at 1096 (quoting 15 U.S.C. § 78u-4(b)(1)).

The Development Company's allegation that the omitted terms were restrictions on development does not meet this requirement. That is because instead of specifying which terms U.S. Bank omitted, the Development Company simply identifies an undefined set of more restrictive terms. But calling the terms more restrictive is a mere conclusion. Without knowing what the terms were, the court does not have enough information to judge whether they might have been material. Because the Development Company describes but does not specifically name the omitted terms, it has not plead the omitted facts with sufficient particularity to sustain a securities fraud claim.

The Development Company's complaint also fails to meet the PSLRA's requirements for pleading scienter. The PSLRA is particularly stringent in its pleading requirements with regard to scienter. *See Adams*, 340 F.3d at 1096. As part of the detailed analysis of whether a plaintiff has adequately plead scienter, courts must weigh plausible non-fraudulent explanations for the alleged omissions. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) ("[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."). The Development Company's failure to plead the details of the allegedly omitted terms precludes the court from properly making opposing inferences for why they may have been omitted.

## III.    State Fraud Claim

The Development Company's state law fraud claim is based on the same facts as its federal securities fraud claim. In a nutshell, the Development Company alleges that U.S. Bank

omitted material information about restrictive terms in Mr. Cannon's loans and U.S. Bank intentions to impose those terms on the Development Company when the Development Company assumed Mr. Cannon's loans. U.S. Bank cites two grounds for dismissing this claim. First, U.S. Bank argues that the Development Company's allegations do not support the conclusion that U.S. Bank had a duty to disclose the more restrictive terms. Second, U.S. Bank contends that the Development Company failed to plead with particularity because the Development Company does not identity the terms with particularity.

On its first argument, U.S. Bank does not prevail. Based on the complaint, it is a plausible conclusion that when U.S. Bank made representations to the Development Company about some of the terms it was intending to propose to the Development Company before the Development Agreement was entered, U.S. Bank gave a misleading impression to the Development Company that the list was exhaustive of all material items it intended to propose after that deal was done. Under Utah law, making a partial material statement imposes a duty to the speaker to include all material facts a listener would need to keep that statement from being misleading. *See, e.g., First Sec. Bank of Utah, N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330-1331 (Utah 1990) (there is duty in fraud to reveal "matters known to [a party] that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading") (quoting Restatement (Second) of Torts § 551, at 119 (1977).)[6] In other words, it is plausible that once U.S. Bank represented to the Development Company that it would be willing

---

[6] The same is true of federal securities law. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) ("[A] duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it alters the meaning of the statement.") (internal quotation marks and citation omitted).

to allow the Development Company to assume the loan under certain conditions, U.S. Bank undertook a duty to reveal all of the material terms it intended to impose.

The question becomes whether the Development Company has alleged U.S. Bank's fraudulent omissions with the requisite particularity. As explained above, the Development Company describes but does not specifically identify the allegedly material terms that U.S. Bank withheld in the period before the Development Company entered the Development Agreement. Rule 9(b), however, requires that a party alleging fraud must set forth the specific "contents of the false representation." *Koch*, 203 F.3d at 1237-38. Without knowing exactly which of the terms set out in the 98 page draft assumption agreement the Development Company alleges are material, U.S. Bank lacks proper notice to defend itself and the court lacks a basis to judge materiality. Accordingly, U.S. Bank's motion to dismiss U.S. Bank's state law fraud claim is granted.

## IV.     Negligent Misrepresentation and/or Omission

Like its fraud claims, the Development Company's negligent misrepresentation and/or omission claim centers on U.S. Bank's failure to reveal the additional restrictive loan terms while the Development Agreement was being negotiated. U.S. Bank argues that this claim should be dismissed because U.S. Bank had no duty to disclose the terms to the Development Company. Utah law focuses on the same facts when determining whether a duty is owed in fraudulent concealment cases as it does for negligent omissions cases. *See Smith v. Frandsen*, 94 P3d 919, 923-24 (Utah 2004). As discussed above, if a fact finder concludes that U.S. Bank made a partial disclosure to the Development Company that was misleading because it was partial, U.S. Bank

would have a duty to disclose all material facts. This duty in negligence arose for U.S. Bank even though it was not a party to the Development Agreement. *See Price-Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986) (noting that a third party to a contract may still be liable for negligent misrepresentations if the third party has a pecuniary interest in the contract and all other elements of the tort are also satisfied.)

The analysis, however, does not stop there. Pleading a claim for negligent misrepresentation under Utah law requires that the plaintiff allege that the misrepresentation harmed the plaintiff. As explained by the Utah Supreme Court in *Price-Orem*, in an action for negligent misrepresentation "a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury." 713 P.2d at 59. As discussed above, the Development Company has alleged that U.S. Bank's failure to reveal the additional restrictive terms lead the Development Company to issue memberships as part of the Development Agreement. But the Development Company fails to connect its issuance of shares itself to any harm. Instead, the Development Company alleges that it was injured when the land the Development Company was supposed to own was sold to a third party. In other words, the Development Company has not alleged that it was injured by its reasonable reliance on U.S. Bank's negligent misrepresentation and/or omissions. Accordingly, the Development Company has failed to state a claim for negligent misrepresentation and/or omission.

## V.     Tortious Interference with Advantageous Economic Relationships

The Development Company's inducing breach of contract and tortious interference

claims are based on Mr. Cannon's sale of the development property to Mr. Lindhart's company, which was a breach of the Development Agreement. According to the Development Company, U.S. Bank was the driving force behind Mr. Cannon's breach of the agreement, and that breach harmed the Development Company.

U.S. Bank raises two reasons to dismiss these claims. First, the Development Company argues that inducing a breach of contract is not an independent tort under Utah law. Second, U.S. Bank contends that the Development Company failed to successfully plead a claim for tortious interference because the Development Company did not plead that U.S. Bank used improper means or had an improper purpose. As discussed below, the court agrees with U.S. Bank on both arguments.

First, the tort of inducing a breach of contract is enveloped within the tort of intentional interference. As explained by the Utah Supreme Court in *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982), "the right of action for interference with a specific contract is but one instance, rather than the total class, of protections against wrongful interference with advantageous economic relations." Here, the sole economic relationship with which the Development Company alleges U.S. Bank interfered was the Development Agreement between the Development Company, Mr. Cannon and Mr. Blackmore. As a result, the Development Company has only one cause of action for tortious interference with that relationship. In other words, the Development Company has called the same tort by two different names.

The Development Company relies on *dicta* from *Nelson v. Jacobsen*, 669 P.2d 1207 (Utah 1983) to argue that there may be a separate cause of action for inducement to breach

contract independent from a general tortious interference claim. The specific passage to which the Development Company cites states: "Actions for intentional interference with prospective economic relations or for inducing breaches of contract are not intended to reestablish those relations or reinstate those contracts but to compensate plaintiffs for their losses." *Id.* at 1215. This statement cannot be read in context to conclude that there are two different torts covering prospective relations and existing contractual relationships. Rather, the Utah Supreme Court is stating that both prospective and existing relationships are covered under the larger tort of intentional interference with advantageous economic relationships. Accordingly, the court analyzes the Development Company's inducement to breach contract and intentional interference claims as the same cause of action.

Having decided that these two counts should be analyzed as one claim for tortious interference with an economic relationship, the court concludes that the Development Company has failed to allege it. To adequately plead an interference claim, a plaintiff must plead that a defendant intentionally interfered with existing or potential economic relations for an improper purpose or by improper means, causing injury. *See Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 331 (Utah 2005). The Development Company argues that it has alleged facts supporting a conclusion that U.S. Bank used improper means. To adequately allege improper means, the Development Company must plead facts supporting a conclusion that U.S. Bank's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession. *Id.*

According to the Development Company, U.S. Bank's acts in interfering with the

relationship between the Development Company and Mr. Cannon were as follows: (a) failing to reveal the development restrictions to the Development Company, (b) pressuring the Development Company to sign the proposed assumption documents (c) participating in, facilitating, and agreeing to Mr. Cannon's company's sale of the property to a third party, (d) inducing Mr. Cannon to sign the loan assumption agreement even though it imposed material limitations on the Development Company that were not included in the Development Agreement; (e) pressuring Mr. Cannon to pay the note early; and (f) telling Mr. Cannon that the Development Company did not have time to refinance the note and by sending the Development Company notice to that effect.[7]

None of these facts, taken as true, support a conclusion that U.S. Bank used improper means. To begin with, U.S. Bank's failing to reveal restrictive terms to the Development Company and pressuring the Development Company to sign the proposed assumption documents have no logical connection to Mr. Cannon's breach of the agreement. As for U.S. Bank's other cited actions, the Development Company has not given any meritorious explanation as to why they were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession. Rather, U.S. Bank argues that those actions were improper because U.S. Bank used the threat of foreclosure against Mr. Cannon to make them happen. But the Development Company cites no authority supporting the proposition that threatening to foreclose is improper under any law or standard. In fact, if U.S. Bank had decided to simply foreclose the

---

[7] The Development Company also argues that U.S. Bank improperly prohibited the transfer of property to the Development Company and re-conveyed the property to any entity other than the Development Company. Neither of these acts are alleged in the Amended Complaint, nor would it be reasonable to infer them from the complaint.

property, it could not be liable for tortious interference with the Development Agreement for doing so. *See Leigh Furniture*, 657 P.2d at 305 n.8 ( "The exercise of a legal right constitutes justification and is a complete defense to an action of tortious intervention of contractual rights.") (quoting *Coronado Mining Corp. v. Marathon Oil Co., Utah*, 577 P.2d 957, 960 (1978)). Because the Development Company does not adequately allege improper means, its tortious interference claim is dismissed.

## VI.     Breach of Fiduciary Duty

The Development Company's breach of fiduciary duty is based on U.S. Bank's failure to convey Mr. Cannon's interest in the property to the Development Company. The Development Company contends that as the holder of Mr. Cannon's trust deed to the property, U.S. Bank had a fiduciary duty to the Development Company to convey the property to the Development Company once the Development Company acquired Mr. Cannon's equitable interest. U.S. Bank argues that this claim should be dismissed because the Development Company has not alleged facts sufficient to conclude that U.S. Bank had a fiduciary duty to do so. The court agrees.

To properly plead a breach of fiduciary claim against U.S. Bank, the Development Company must allege facts showing: (1) that U.S. Bank had a fiduciary relationship with and owed a fiduciary duty to the Development Company; (2) that U.S. Bank breached that duty; and (3) the breach damaged the Development Company. *See Roderick v. Ricks,* 54 P.3d 1119, 1125 (Utah 2002) (citing elements for breach of fiduciary duty in a legal malpractice case).

The Development Company fails on the first element of this test. As general matter, a holder of a trust deed has no fiduciary duty to the trustor. *See Russell v. Lundberg*, 120 P.3d 541,

545 (Utah Ct. App. 2005) ("[A] fiduciary duty arises not from the mere existence of the trustor-trustee relationship, but rather from facts evidencing a confidential relationship above and beyond that ordinarily found between trustor and trustee.")  Instead, a fiduciary duty can only be found in the context of such a relationship "(1) 'where a trustor reposes its trust or confidence in the trustee and relies on the trustee's guidance,' (2) 'where the trustee could exercise extraordinary influence over the trustor,' and (3) 'where the trustee stands in a dominant position to the trustor.'"  *Id.* (citations omitted).  Simply put, the Development Company has not alleged any facts that plausibly lead to the conclusion the relationship between U.S. Bank and the Development Company met this exception.

The Development Company's arguments to the contrary are not persuasive.  Initially, the Development Company argues without citing any authority that once the parties entered the Development Agreement, any duty U.S. Bank owed Mr. Cannon was transferred to the Development Company even though the property itself was never transferred.  That proposition does not strike the court as correct, but even if it is, the Development Company fails to show that a fiduciary duty existed between U.S. Bank and either Mr. Cannon or the Development Company.  First, the Development Company does not maintain that there was any trust or confidence between U.S. Bank or Mr. Cannon or the Development Company.  Further, the Development Company does not allege that Mr. Cannon or the Development Company looked to U.S. Bank for guidance.  Moreover, U.S. Bank's power to foreclose on the property is nothing extraordinary.  Finally, while U.S. Bank may have had superior knowledge than the Development Company did about the terms of the loan that U.S. Bank intended to propose before the

Development Agreement, the Development Company was well aware of those proposed terms by September 2003.  Moreover, the Development Agreement gave Mr. Blackmore the ability to back out of the deal if he did not like the terms.  In sum, the Development Company does not meet any of the requirements of pleading that U.S. Bank owed it a fiduciary duty of any sort. Accordingly, U.S. Bank's motion to dismiss this claim is granted.

**ORDER**

For the reasons stated above, the court GRANTS U.S. Bank's motion to dismiss with respect to all causes of action in the Amended Complaint.

DATED this 30th day of April, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge